Theresa D. CROOKS, Appellant,

v.

M1 REAL ESTATE PARTNERS, LTD., Moses Management, Inc., Robert A. Moses, Jr., and James Moses, Appellees.

No. 05–05–01593–CV.

Court of Appeals of Texas, Dallas.

Aug. 29, 2007.

Rehearing Overruled Dec. 7, 2007.

Dale B. Tillery, Tillery & Tillery, Dallas, TX, for Appellant.

Jeffrey E. Cook, Sullivan & Cook, L.L.C., Randall G. Walters, Gregory R. Ave, Mary Stephanie Whita Urano, Wal-

ters, Balido & Crain, L.L.P., Nathan J. Schwartz, Dallas, TX, for Appellee.

Before Justices MORRIS, WRIGHT, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

Theresa D. Crooks sued M1Real Estate Partners, Ltd., Moses Management, Inc., Robert A. Moses, Jr. (collectively, the M1 defendants), James Moses, and others to recover damages for personal injuries suffered at a social gathering. A previous summary judgment in appellees' favor was affirmed in part and reversed in part. See *Crooks v. Moses*, 138 S.W.3d 629, 642 (Tex. App.-Dallas 2004, no pet.) (*Crooks I*). We remanded Crooks's claim for negligent undertaking and the derivative liability issues of agency and vicarious liability related to that claim. Subsequently, summary judgment was granted on all issues except Crooks's negligent undertaking claim against James Moses and that he may have been responsible under a respondeat superior theory for the conduct of another person, William Nichols, who was allegedly acting in furtherance of a mission for James's benefit. Those issues were tried to a jury, which found no negligence and no responsibility for Nichols's conduct. In nine issues, Crooks challenges the summary judgments and the admission of certain summary judgment evidence. In her remaining two issues, Crooks contends the evidence supporting the jury's answers is legally and factually insufficient. For the reasons stated below, we affirm the trial court's final judgment.

## FACTUAL BACKGROUND

The incident giving rise to this lawsuit occurred at a social gathering Crooks attended on rural property located in Collin County, called the Princeton Property.

The Princeton Property was owned by M1 Real Estate Partners, Inc., a limited partnership. Moses Management, Inc. was the general partner of M1. Robert A. Moses, Jr. and his wife Avis were the sole shareholders of Moses Management, Inc.; Robert was president of the corporation. James Moses is Robert's son. James was neither an officer nor an employee of M1 or Moses Management, Inc., and did not own any interest in either entity.

A group of friends planned a bonfire as a social gathering. The group included Crooks, James and his wife, Nichols and his wife, and others who had socialized before. James offered the Princeton Property as a location. The party occurred on December 21, 2001. Nichols was a fireman, and James either asked him or he volunteered to help James set up the bonfire. They built a barrier to contain the fire using a metal structure they found on the property. The metal structure was made of two eight- to ten-inch metal pipes connected by metal bars at both ends, making a rectangle. The pipes looked hollow to James and Nichols, but each pipe was a sealed container with a liquid made of oil and water and a piston inside. The heat from the bonfire caused the liquid in one of the pipes to vaporize and expand, which in turn caused the pipe to explode and injure Crooks.

## SUMMARY JUDGMENT

Crooks's first nine issues are directed to the propriety of the trial court's granting summary judgment in favor of the M1 defendants and James and the trial court's rulings on her objections to summary judgment evidence. Crooks argues these issues together.

*Motions for Summary Judgment,*
*Amended Pleadings, Responses,*
*and Replies*

After Crooks appealed the summary judgments granted against her in *Crooks*

*I*, she added William Nichols as a party. After remand, M1, Moses Management, and James filed a Motion for Summary Judgment on the Remaining Claims, asserting traditional and no evidence grounds. Robert filed a First Amended Motion for Summary Judgment. These motions were directed to the claims alleged in Crooks's Second Amended Original Petition: negligent undertaking, actual agency, apparent authority, and master/servant relationship.

Crooks responded to these motions. Crooks also filed a Third Amended Original Petition. The M1 defendants filed replies directed to the claims pleaded in that petition and to Crooks's response. Crooks filed a supplemental response.

Crooks then filed a Fourth Amended Original Petition, alleging: (1) James and Nichols created a dangerous condition; (2) James and Nichols were liable for negligent undertaking by choosing to use an unknown metal structure containing two cylinders as a fire barrier, failing to adequately inspect the structure, and not monitoring the bonfire; (3) Crooks was a licensee at the time of her injury; (4) the M1 defendants, individually or through agents and servants James and Nichols, had a non-delegable duty to refrain from engaging in negligent undertakings and conduct; (5) the M1 defendants were liable for James's and Nichols's conduct through agency, master/servant, and ratification theories; (6) Robert was liable on theories of alter ego, piercing the corporate veil, and conduct exceeding his authority with

M1 and Moses Management; and (7) James was a "vice principal" of the M1 defendants.[1]

M1, Moses Management, and James filed a Supplemental Reply in support of their motion for summary judgment. Robert filed a Reply to Plaintiff's Supplemental Response. Both of these replies were directed to the claims pleaded in the Fourth Amended Original Petition and to Crooks's supplemental response.

### Summary Judgment Orders, Trial, and Final Judgment

The interlocutory order on Robert's motion for summary judgment granted his motion without stating the grounds and ordered that Crooks take nothing against him. Likewise, the interlocutory order on the other motion granted that motion in its entirety without stating the grounds as to M1 and Moses Management and ordered Crooks take nothing against them. It also granted that motion in all respects as to James other than the negligent undertaking claim against him. Both orders show that the trial court considered the motions, responses, and replies.

Nichols settled with Crooks before trial and was nonsuited. Crooks's negligent undertaking claim against James and his responsibility for Nichols's conduct under a respondeat superior theory were tried to a jury, which found against Crooks on these issues.

The final judgment states that the trial court "having previously granted summary

---

1. The Fourth Amended Original Petition also alleged that M1, acting through Moses Management and Robert, was negligent by failing to use reasonable care in inspecting the Princeton Property and the discarded metal cylinders located there, and in failing to prohibit their use, and, in addition, in failing to give directions to James as to the use and enjoyment of the Princeton Property and to

communicate proper regulations for the use of the Princeton Property to him, and failing to ensure that the metal structures were not likely to cause harm to invited guests. The Fourth Amended Original Petition also alleged the application of res ipsa loquitur. Crooks does not discuss these allegations on appeal, and we do not consider them further.

judgment on all pending claims and causes of action against all other Defendants, called for trial the remaining cause of action of negligent undertaking against James Moses." The final judgment expressly adopted and incorporated these two orders. It also provided that it disposed of "all claims against all parties." *See Webb v. Jorns,* 488 S.W.2d 407, 409 (Tex.1972) (interlocutory judgment becomes final judgment when it merges into final judgment disposing of whole case); *see also Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853, 855 (Tex.1995) (per curiam) ("A partial summary judgment is a decision on the merits unless set aside by the trial court.... It becomes final upon the disposition of the other issues of the case.").

## Standard of Review

A traditional motion for summary judgment must be granted if the evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tex.R. Civ. P. 166a(c); *Little v. Tex. Dep't of Crim. Justice,* 148 S.W.3d 374, 381 (Tex. 2004). The movant bears the burden of proving that there is no genuine issue of material fact. *See* Tex.R. Civ. P. 166a(c); *SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex.2005) (per curiam).

■ In reviewing a motion for summary judgment, an appellate court must take the nonmovant's evidence as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in favor of the nonmovant. *Little,* 148 S.W.3d at 381. If a defendant conclusively negates at least one element of the plaintiff's cause of action, then he is entitled to summary judgment. *Id.*

■ A party may move for summary judgment under rule 166a(i) on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). Unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact on the challenged elements, the court must grant the motion. *Id.* The reviewing court must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Minyard Food Stores, Inc. v. Goodman,* 80 S.W.3d 573, 577 (Tex. 2002). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004). But more than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

■ When multiple grounds for summary judgment are raised and the trial court does not specify the ground or grounds relied upon for its ruling, the appellate court will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex. 2001).

## Discussion

### Actual Agency

In their motions for summary judgment, M1, Moses Management, and Robert cited the following law on actual agency and asserted that Crooks had not produced more than a scintilla of evidence that M1, Moses Management, or Robert: (1) intentionally conferred authority on either James or Nichols to invite guests to the Princeton Property on their behalf, either

individually or collectively; (2) intentionally conferred authority in either James or Nichols to construct a fire on the property on their behalf, either individually or collectively; and (3) intentionally conferred authority on either James or Nichols to use the metal structure to enclose the fire on their behalf, either individually or collectively.

An agent is a person who is authorized by another to transact business or manage some affair by that person's authority and on account of it. *See Tenn.-La. Oil Co. v. Cain,* 400 S.W.2d 318, 325 (Tex.1966); *Grace Cmty. Church v. Gonzales,* 853 S.W.2d 678, 680 (Tex.App.-Houston [14th Dist.] 1993, no writ). An agency relationship is created when the principal: (1) intentionally confers authority on the agent; (2) intentionally allows an agent to believe it has authority; or (3) allows an agent to believe it has authority to act by lack of due care. *Suarez v. Jordan,* 35 S.W.3d 268, 273 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Authority to act on behalf of the principal may be express or implied. Express authority is delegated to an agent by words that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal. *Saunders v. Commercial Indus. Serv. Co.,* 541 S.W.2d 658, 660 (Tex.Civ.App.-Eastland 1976, writ ref'd n.r.e.). An agent has express authority when the principal makes it clear to the agent that it wants certain acts to be done. *City of San Antonio v. Aguilar,* 670 S.W.2d 681, 683 (Tex.App.-San Antonio 1984, writ dism'd). Implied authority is the authority to do whatever is reasonably necessary and proper to carry out the agent's express powers. *Spring Garden 79U, Inc. v. Stewart Title Co.,* 874 S.W.2d 945, 948 (Tex.App.-Houston [1st Dist.] 1994, no writ). An agent who does not have express authority cannot have implied authority. *Sociedad De Solaridad Social "El Estillero" v. J.S. McManus Produce Co.,* 964 S.W.2d 332, 334 (Tex.App.-Corpus Christi 1998, no pet.).

Crooks argues that she produced evidence raising a fact issue on the challenged element. However, her evidence shows that James was authorized to have guests on the property as long as he accompanied them. Crooks relies on James's deposition testimony that he assumed he could take guests to the Princeton Property, and the following testimony, elicited by Crooks's counsel:

Q. And are you trying to tell the jury that you did not have permission to have a bonfire on the premises on December 21st, 2001?

A. I assumed that I could do that out there.

Q. Now, tell us why did you assume that?

A. I assumed that because my father told me that I could go out there and take guests, but they couldn't go out there without me, so I just assumed that I could kind of do what I wanted.

Q. Enjoy the premises?

A Right.

At most, this evidence shows that James had permission to use and enjoy the Princeton Property and to take invited guests, subject to the condition of accompaniment, on his own behalf. We cannot agree that it is evidence raising a fact issue that anyone representing the corporate entities or Robert specifically gave James authority to invite guests on their behalf or to build the bonfire using the metal structures on their behalf. *See Saunders,* 541 S.W.2d at 660. We conclude that Crooks failed to carry her burden under rule 166a(i) to produce evidence raising a fact issue on the challenged element of conferring authority. In her ninth issue, Crooks argues the trial court abused

its discretion in overruling her objections to evidence the M1 defendants relied on to show they did not confer authority on James because that evidence was legally insufficient; however, because we need not decide this issue on traditional grounds, we need not reach issue nine.

Crooks also argues that the fact that Crooks was a licensee on the premises and was on the property with James's permission is evidence that M1, Moses Management, and Robert "authorized and ratified" James's invitation to her and creates a reasonable inference he acted on their behalf and with their authority in inviting her. Again, we cannot agree. There is no evidence the corporate entities or Robert expressly authorized James to invite Crooks. See id. In fact, there is undisputed evidence Robert did not know about the party until after it occurred. We conclude Crooks's status as a licensee is no evidence raising a fact issue under rule 166a(i) on the challenged element of conferring authority on behalf of the M1 defendants.

■ M1, Moses Management, and Robert also moved for summary judgment on grounds that their evidence showed there was no agency relationship between them and Nichols. Specifically, Nichols testified by deposition that he had no reason to believe that he was acting on behalf of M1, Moses Management, or Robert when he built the fire. Crooks does not direct our attention to any contradictory evidence raising a fact issue on this element under rule 166a(c). Because we conclude the M1 defendants carried their burden under the traditional summary judgment standard that they were entitled to judgment as a matter of law as actual agents of Nichols, and Crooks failed to

present summary judgment evidence raising an issue of fact, we conclude the trial court properly granted summary judgment in the M1 defendants' favor on this issue. We need not address the propriety of summary judgment on no evidence grounds.

### Apparent Agency [2]

■ The M1 defendants moved for summary judgment on grounds of apparent agency, stating that "to prove James Moses and Nichols were apparent agents [of the M1 defendants], Plaintiff must establish that, individually or collectively, they 1) affirmatively held James Moses and William Nichols out as having authority to act on their behalf, 2) knowingly permitted James Moses and William Nichols to hold themselves out as having authority to act on their behalf, or 3) acted with such a lack of ordinary care as to clothe James Moses and William Nichols with the indicia of authority." They cited *Baptist Memorial Hospital System v. Sampson,* 969 S.W.2d 945, 949 (Tex.1998). Even though the words "no evidence" were not used in relation to this theory, the M1 defendants' motions for summary judgment expressly stated the standards under rule 166a(i). In addition, Crooks pointed to evidence responsive to this issue in her response and on appeal. We conclude the motion complied with rule 166a(i).

■ Although Crooks argues her evidence raised a genuine issue of material fact on the challenged element, we disagree. Crooks's evidence relates to James's permission to "use and enjoy" the property; such evidence establishes James's use and enjoyment of the property *on his own behalf and on behalf of his*

---

**2.** There is "no distinction" among ostensible agency, apparent agency, apparent authority, and agency by estoppel. They are used "in- terchangeably." *See Baptist Mem'l Hosp. Syst.,* 969 S.W.2d at 947 n. 2.

*guests,* but not on behalf of the M1 defendants. *See id.* Crooks argues that the evidence shows she believed James was acting on behalf of his father in inviting her to the Princeton Property. But she produced no evidence as to Robert's—or anyone else representing the corporate entities—conduct *to her* as to James's authority to act *on their behalf. See id.* Even though Robert may have built a fire on the property previously, this is no evidence of Robert's conduct towards Crooks that he gave any such authority to James. We conclude that Crooks failed to carry her burden under rule 166a(i) to produce evidence raising a fact issue on the challenged element of any M1 defendant's conduct in conferring apparent agency on James. Because we conclude that Crooks failed to meet her burden under the no evidence standard as to her claims that the M1 defendants were liable as actual and apparent agents of James, we conclude the trial court properly granted summary judgment in the M1 defendants' favor on these claims. We need not address the propriety of summary judgment on traditional grounds.

■ Crooks argues the summary judgement motions failed to address her claims for vicarious liability on theories of "subagency." Crooks does not explain how this differs from "agency" or why elements of agency are not applicable also to subagency. We conclude she has inadequately briefed this argument. *See* Tex. R.App. P. 38.1(h).

Crooks's fifth issue contends the trial court erred in granting summary judgment in favor of M1 and Moses Management on her agency claim. Her sixth issue contends the trial court erred in granting summary judgment in favor of Robert on her agency claim. Because we have concluded the trial court did not err in granting summary judgment on this claim, we resolve Crooks's fifth and sixth issues against her.

### Master/Servant Relationship

M1, Moses Management, and Robert moved for summary judgment on grounds that Crooks had no evidence they exercised the right of control over the means and details of any aspect of the social gathering, including the construction and management of the bonfire. They cited *Northwestern National Life Insurance Co. v. Black,* 383 S.W.2d 806, 810 (Tex.Civ. App.-Texarkana 1964, writ ref'd n.r.e.), as stating the element challenged: the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished, but as well as the means and details of its accomplishment; not only what shall be done, but how it shall be done.

■ Crooks argues that she produced summary judgment evidence raising a genuine issue of material fact on the elements of a master/servant relationship between James and the M1 defendants and evidence James "was performing services peculiar to the business and affairs of M1 on M1's property," thereby "establishing, prima facie" such a master/servant relationship. However, her evidence establishes that James "was using the Princeton Property for his own enjoyment and benefit and for the enjoyment and benefit of his invited guests" and that this "was peculiar to the business of [M1]." None of this evidence establishes right of control. Even if there were evidence that Robert had control over the property, this is no evidence that he had control over the means and details of any of James's activities on the Princeton Property. *See id.* Specifically, the power to exclude James and his guests from the property is not the power to control his activities when he was

present on the property. We conclude that Crooks failed to carry her burden under rule 166a(i) to produce evidence raising a fact issue on the challenged element of right of control. Because we conclude that Crooks failed to meet her burden under the no evidence standard as to her claim that the M1 defendants were liable for James's conduct under a master/servant relationship, we conclude the trial court properly granted summary judgment in the M1 defendants' favor on this claim. We need not address the propriety of summary judgment on traditional grounds.

■■ In addition, Crooks argues that summary judgment on her theory of "subservant" was improper because it was not addressed in the motions for summary judgment. However, like "subagency," Crooks has failed to adequately brief this argument by failing to distinguish the elements of subservant and master/servant relationship. *See* Tex.R.App. P. 38.1(h).

Crooks's seventh issue contends the trial court erred in granting summary judgment in favor of M1 and Moses Management on her master/servant relationship claim. Her eighth issue contends the trial court erred in granting summary judgment in favor of Robert on her master/servant relationship claim. Because we have concluded the trial court did not err in granting summary judgment on this claim, we resolve Crooks's seventh and eighth issues against her.

### Creation of a Dangerous Condition, Licensee, and Negligence

In their motions for summary judgment, the M1 defendants contended that Crooks could not produce any evidence that any of them individually had a non-delegable duty, or that any such alleged non-delegable duty was breached by an independent contractor to whom the duty was delegat-

ed. *See MBank El Paso, N.A. v. Sanchez,* 836 S.W.2d 151, 153 (Tex.1992).

In her response to the motions, Crooks specifically addressed "non delegable duty" and contended that her evidence showed the M1 defendants had the duty not to injure a licensee by willful, wanton, or grossly negligent conduct; that they use ordinary care to either warn a licensee of, or to make reasonably safe, a dangerous condition of which they were aware and the licensee was not; and the duty not to injure a licensee by their own negligence. Crooks relied on *State Department of Highways & Public Transportation v. Payne,* 838 S.W.2d 235, 237 (Tex. 1992), and *Sibai v. Wal–Mart Stores, Inc.,* 986 S.W.2d 702, 706 (Tex.App.-Dallas 1999, no pet.).

In his reply, Robert contended that Crooks failed to present evidence Robert had a non-delegable duty that James and Nichols undertook to perform. In their reply, M1 and Moses Management argued that Crooks could not make a new allegation of gross negligence, nor could she assert her action for creation of dangerous condition, which was "just one version of a premises liability action," because, by the law of the case, she was bound by the decision of the appellate court.

■■ In *Crooks I,* this Court affirmed summary judgment on Crooks's claims for negligent activity and premises liability. Only the claims for negligent undertaking and the derivative liability issues of agency and vicarious liability related to that claim were remanded. *See Crooks,* 138 S.W.3d at 642. Crooks did not appeal, and mandate issued.

As we stated in *J.O. Lockridge General Contractors, Inc. v. Morgan,* 848 S.W.2d 248, 250–51 (Tex.App.-Dallas 1993, writ denied):

The law of the case doctrine is that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its later stages.... The doctrine's intent is to achieve uniformity of decision as well as judicial economy and efficiency.... Public policy is the basis for the doctrine. The policy aims at putting an end to litigation....

The law of the case applies only to questions of law and does not apply to questions of fact.... The doctrine applies if the facts in the second trial are substantially the same as in the first trial or so nearly the same that they do not materially affect the legal issues involved in the second trial.... A reviewing court does not again pass upon any matter either presented to or directly passed upon or which was in effect disposed of on a former appeal to that court....

* * *

[A] party cannot waive the doctrine ... because the doctrine protects our opinion and judgment. It is our Court that determines whether the law of the case doctrine applies on the second appeal of a case. This is so because we do not again pass on any matter that was either directly or indirectly disposed of on a former appeal....

The facts in the case after the remand remained the same, despite the addition of Robert as a defendant. The M1 defendants' direct liability for creation of a dangerous situation/condition and Crooks's status as a licensee, pertinent to her premises liability claim, had been previously resolved in *Crooks I*, and are therefore precluded here under the law of the case doctrine. *See id.*

Crooks argues that the law of the case doctrine was not included in the M1 defendants' motion for summary judgment, and therefore summary judgment on this ground was improper. But the record shows the summary judgment ground was "no evidence of non delegable duty," placing the burden on Crooks to respond. She did so by raising the issues of creation of a dangerous condition, licensee, and negligence. The M1 defendants properly responded by arguing law of the case. Thus, the premise of Crooks's argument is incorrect.

Nevertheless, Crooks argues she produced evidence creating a fact issue on the M1 defendants' conduct in creating a dangerous situation or condition. Her evidence related to James and Nichols's conduct, not any evidence or argument as to the M1 defendants' duty. We conclude this is not responsive to the no-evidence grounds of non-delegable duty and the response as to law of the case. Accordingly, we conclude the trial court did not err in granting summary judgment in favor of the M1 defendants Crooks on creation of a dangerous condition, licensee, and negligence.

### Ratification

Crooks argues that the M1 defendants are not entitled to summary judgment on her claim for ratification because the M1 defendants' replies, but not their motions for summary judgment, addressed this claim which she pleaded in her Fourth Amended Original Petition. However, the record shows that Crooks first raised this issue in her response to the M1 defendants' motions for summary judgment. She argued that "authorization and ratification are elements used to determine if an agent-principal relationship exists." She argued her evidence conclusively showed or raised a fact issue that the M1 defendants ratified James's conduct in inviting guests and undertaking to make the

property and the bonfire safe for the guests. Thus, issue was joined as to ratification before Crooks filed her Fourth Amended Original Petition.

In their supplemental replies, the M1 defendants argued that Crooks's evidence that she believed, based on James's statements and conduct, that James was acting on behalf of his father in inviting her to the property and building a bonfire was legally no evidence of ratification. We agree. Ratification of the results of conduct without full knowledge of the conduct does not constitute express (or implied) ratification of the conduct. *Tex. First Nat'l Bank v. Ng*, 167 S.W.3d 842, 863 (Tex.App.-Houston [14th Dist.] 2005, judgment vacated w.r.m.) (citing *Spangler v. Jones*, 861 S.W.2d 392, 394–96 (Tex. App.-Dallas 1993, writ denied)). The evidence is undisputed that neither Robert nor any representative of M1 or Moses Management knew about the party or the bonfire until after they occurred. Accordingly, there is no fact issue as to ratification. We conclude the trial court did not err in granting summary judgment in favor of the M1 defendants as to ratification.

### Respondeat Superior

Crooks argued she pleaded the doctrine of respondeat superior in her Fourth Amended Original Petition that was not addressed in the M1 defendants' motions for summary judgment. Crooks's references to her petition, however, are to her theories of agency, subagency, master/servant relationship, and subservant. Moreover, the M1 defendants' motions for summary judgment addressed "vicarious liability" through the agency/authority and master/servant theories discussed above. Crooks offers no argument how she pleaded a respondeat superior theory different from these theories. Thus, she has inadequately briefed this argument as to re-

spondeat superior. *See* TEX.R.APP. P. 38.1(h).

### Vice Principal, Piercing the Corporate Veil, Alter Ego, Exceeding Scope of Authority

Crooks argues she pleaded these doctrines by which Robert was liable for her damages and that Robert failed to challenge them in his First Amended Motion for Summary Judgment. First, her vice principal allegations related to James, not Robert, as a vice principal of the corporate entities. But on appeal, Crooks argues Robert was a vice principal. There were no allegations in her Fourth Amended Original Petition that Robert was a principal. Contrary to her argument, no appellant was not required to challenge an issue not raised in her pleading. Crooks's argument lacks merit.

Moreover, these doctrines are not substantive causes of action. *See Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 147 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Instead, they are a means of imposing on an individual a corporations's liability for an underlying cause of action. *See id.* The only underlying cause of action for which Crooks argued the M1 defendants were directly liable—and which she urges on appeal—was their "non delegable duty to persons entering upon the Princeton Property as invited guests and licensees." The M1 defendants moved on no evidence grounds on that theory, and we have concluded that Crooks failed to carry her burden to put forth evidence raising a fact issue on "non delegable duty." Since Crooks failed to produce evidence on the underlying cause of action, summary judgment on Crooks's theories of "abuse of the corporate form" was proper. *See id.*

In her first and third issues, Crooks contends the trial court erred in granting

summary judgment in favor of M1 and Moses Management on the claims discussed above because their motion for summary judgment failed to address them. In her second and fourth issues, she contends the trial court erred in granting summary judgment in favor of Robert on these claims because his motion for summary judgment failed to address them. We have addressed Crooks's arguments as to the propriety of summary judgment and rejected them. Accordingly, we conclude the trial court did not err in granting summary judgment in favor of the M1 defendants—M1, Moses Management, and Robert— and resolve these issues against Crooks.

## SUFFICIENCY OF THE EVIDENCE

In her tenth and eleventh issues, Crooks challenges the legal and factual sufficiency of the evidence supporting the jury's answers to Questions 1 and 2 regarding Crooks's negligent undertaking claim against James and that he may have been responsible for Nichols's conduct.[3]

### Standard of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co.*, 46 S.W.3d at 241. "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). In making this determination, we must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* We cannot substitute our judgment for that of the trier of fact, so long as the evidence falls within this zone of reasonable disagreement. *Id.* at 822. Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. We must consider and weigh all of the evidence, and we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.; Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### Negligent Undertaking

Question 1 asked: "Did the negligence, if any, of *James Moses* proximately cause the occurrence in question?" The instruction included the elements of negligent undertaking. The jury answered in the negative.

### Applicable Law

A duty to use reasonable care may arise when a person undertakes to provide services to another, either gratu-

---

**3.** Question 3 was predicated on an affirmative answer to Question 2 and was directed to the negligence, if any, of Nichols in proximately causing the occurrence in question. Question 4 was a damages question. The jury did not answer either Question 3 or 4.

itously or for compensation. *Crooks,* 138 S.W.3d at 637 (citing *Torrington Co. v. Stutzman,* 46 S.W.3d 829, 837 (Tex.2000)). If one undertakes to make the premises safe for others, he or she owes a duty to use due care in make the premises safe. *Id.* "Due care" is that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances. *Id.* at 637 n. 2. As stated in *Colonial Savings Association v. Taylor,* 544 S.W.2d 116, 119–20 (Tex.1976) (citing RESTATEMENT (SECOND) OF TORTS § 323 (1965)):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Thus, to establish a negligent undertaking, a plaintiff must show: (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (3) the plaintiff relied upon the defendant's performance; or (4) the defendant's performance increased the plaintiff's risk of harm. *Torrington Co.,* 46 S.W.3d at 838–39.

## Discussion

■■■ James and Nichols arrived at the Princeton Property in the afternoon to set up for the evening's bonfire. James testified that he and Nichols took certain safety precautions, primarily because of the wind: selecting a level space for the fire, grading the location, mowing the grass, parking James's truck as a windblock, and making a barrier to contain the fire. James found several metal structures behind an outbuilding. They appeared to be made of hollow pipes. James testified "you could look down in there and you could see a good maybe foot" and "[t]hey looked hollow." He did not know what they were, but found out from others later they were "some kind of a piston" like "old car lifts." James asked Nichols what he thought about using one of the structures as a barrier. Nichols looked at it and said it looked fine. James testified he made sure of the safety of the barrier by having a fireman look at it; he said, "Had I not had a fireman look at it, I wouldn't have used that." He also testified he added his judgment to that of Nichols. They dragged the metal structure to the graded area. The fire was lit as it was getting dark. James and others checked on the fire to make sure it was still contained. James testified he did not see the need to monitor the metal barrier because he knew it was hot.

We conclude this is some evidence that James used due care in undertaking to make the bonfire safe in using the metal structure as a barrier. There was no evidence that a reasonable person in his circumstances knew or should have known what the metal structure was and thus should have investigated it further beyond looking into a pipe to determine it was hollow. Nor was there evidence that anything appeared to be wrong with the metal structure before the explosion. *See Crooks,* 138 S.W.3d at 637 n. 2.

Nevertheless, Crooks argues James should not have exposed an unknown metal structure to heat without ensuring it could safely be so exposed and that "a closed cylinder" should not be so exposed. However, there was no evidence a reason-

able person in James's circumstances knew or should have known the pipe was a closed cylinder containing a piston. In fact, there was evidence the structure was a "two-cylinder hydraulic system," and Nichols, who was also an airplane mechanic, apparently did not recognize it until after the explosion.

Crooks asked James whether he "did anything else" to test it. Crooks asked Nichols whether he touched it or knocked it. But there was no evidence that a reasonable person in James's circumstances would have touched or knocked on the pipe, or that such knocking would have revealed the presence of a piston inside. Crooks also argues James should have removed plugs on the pipes, which would have created an escape valve for the vaporizing liquid. James was not asked about the plugs, and there was no evidence that a reasonable person in James's circumstances would have noticed any plugs or would have appreciated their significance as to this metal structure.

Viewing the evidence in the light most favorable to the judgment, we conclude the evidence was legally sufficient to support the jury's answer to Question 1. In addition, considering and weighing all of the evidence, we cannot conclude that the evidence supporting the jury's answer to Question 1 is so weak or that the answer is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242; *Pool*, 715 S.W.2d at 635; *Cain*, 709 S.W.2d at 176. Accordingly, we resolve Crooks's tenth issue against her.

### Respondeat Superior

Question 2 asked: "On the occasion in question, was William M. Nichols acting in the furtherance of a mission for the benefit of James Moses and subject to control by James Moses as to the details of the mission?" The jury answered in the negative.

On appeal, Crooks relies on *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002) (plurality op.), to support her argument that she proved a respondeat superior relationship between James and Nichols because the evidence showed Nichols was acting in the furtherance of a mission for the benefit of James and that Nichols was subject to control by James as to the details of the mission.

### Applicable Law

Generally in Texas, the doctrine of vicarious liability, or respondeat superior, makes a principal liable for the conduct of his employee or agent. *F.F.P. Operating Partners, L.P. v. Duenez*, 50 Tex. Sup.Ct. J. 764, 2007 WL 1376357, at *5 (Tex. May 11, 2007) (citing *Baptist Mem. Hosp. Sys.*, 969 S.W.2d at 947). This liability is based on the principal's control or right to control the agent's actions undertaken to further the principal's objectives. *Id.* (citing *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 136 (Tex.2003)). Thus, the key elements of respondeat superior liability outside the employment context are: (1) a benefit to the defendant, and (2) the defendant's right of control. *St. Joseph Hosp.*, 94 S.W.3d at 537. The right of control includes not only the right to assign tasks but the right to dictate the means and details of how the agent will complete these tasks. *Elk River, Inc. v. Garrison Tool & Die, Ltd.*, 222 S.W.3d 772, 782 (Tex.App.-Dallas 2007, pet. filed); *Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

### Discussion

James testified Nichols's role was to assist him in building the bonfire. James did not pay Nichols or give him any other remuneration or benefit. James was asked if Nichols "was just there to help you out because he was going to be there at the party" and James agreed. Other

partygoers included Nichols's wife and friends. This is some evidence that Nichols was acting for his own and others' benefit, not specifically for James's benefit.

James testified he relied on Nichols's opinion of the metal structure as a suitable barrier. However, there is no evidence that James directed Nichols how to investigate the pipe. Nichols testified that James showed him the structure, and he looked at it. Even though James testified he relied on Nichols's opinion, there was no evidence that James did more than show Nichols the structure. Moreover, James testified he relied on both his and Nichols's judgment. Crooks's argument that James had the right of control of Nichols because Nichols assisted James in building the bonfire is unavailing; Crooks cites no authority to support her proposition that a helper or an assistant is subject to another's control as a matter of law. Accordingly, we conclude there is no evidence James had the right to control Nichols in the details of using the metal structure as a bonfire perimeter by dictating the means and details of how Nichols investigated such use. *See Elk River, Inc.,* 222 S.W.3d at 782; *Schott Glas,* 178 S.W.3d at 315. Accordingly, reasonable and fair-minded people could conclude James did not have the right of control of Nichols on this issue. *See City of Keller,* 168 S.W.3d at 827. We conclude the evidence is legally sufficient to support the jury's answer to Question 2; we need not consider the factual sufficiency of the evidence. We resolve Crooks's eleventh issue against her.

## CONCLUSION

Because of our disposition of Crooks's eleven issues, we affirm the trial court's final judgment.