# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2015

Lyle W. Cayce
Clerk

No. 13-51180
c/w No. 14-50099

BERKLEY REGIONAL INSURANCE COMPANY, as Subrogee of Venus Rouhani and as Assignee/Subrogee of the Tower of Town Lake Condominium Association, Inc.,

      Plaintiff - Appellant

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

      Defendant - Appellee

Appeals from the United States District Court
for the Western District of Texas
U.S.D.C. No. 1:10-CV-362

Before STEWART, Chief Judge, and BARKSDALE and GRAVES, Circuit Judges.

PER CURIAM:*

    This case involves an insurance claim, controlled by Texas law for this diversity action, arising from an injury sustained on the property of Towers of

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-51180 c/w No. 14-50099

Town Lake Condominiums (Towers). Towers, in an attempt to satisfy the notice requirements of an umbrella insurance policy with Philadelphia Indemnity Insurance Company (Philadelphia), sent notice of the claim to the broker of that policy. The core of the dispute is whether this notice satisfied the requirements of the umbrella policy, and, if not, whether Philadelphia was prejudiced as a result. Finding notice to the broker insufficient and Philadelphia prejudiced, the district court granted summary judgment in favor of Philadelphia. For the reasons stated herein, we AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2004, Venus Rouhani (Rouhani) sued Towers in Texas state court for injuries she sustained at Towers, and a jury awarded her $1,654,663.50 plus interest and costs (totaling $2,167,300.30) in 2006. The damages were covered by a $1,000,000 primary policy issued by Nautilus Insurance Company (Nautilus) and a $20,000,000 umbrella policy (Umbrella Policy) issued by Philadelphia. During the state court appeal of the judgment, Towers, through Nautilus, obtained two supersedeas bonds underwritten by Berkley Regional Insurance Company (Berkley). Nautilus tendered its policy limits plus interest in the amount of $1,457,561.41 to satisfy the judgment, but Philadelphia refused to pay the remainder of the judgment, arguing that Towers failed to give Philadelphia notice of Rouhani's claim until after the verdict was rendered.

In fact, during the pendency of the suit in 2005, Towers forwarded the petition and notice of the suit to an alleged agent of Philadelphia, Wortham Insurance Group (Wortham) (a/k/a Consolidated Insurance Agency (Consolidated)), the broker of the Umbrella Policy.[1] Additionally, after the jury verdict, Towers gave notice directly to Philadelphia and demanded that

---

[1] Wortham and Consolidated are one and the same.

No. 13-51180 c/w No. 14-50099

Philadelphia pay the excess.  Philadelphia argued this is the first notice of the suit it received, while Berkley argued that notice to Wortham was sufficient to count as constructive notice to Philadelphia.  Berkley paid the remaining $709,738.89 to Rouhani in exchange for an assignment of Rouhani's and Towers' rights under the Umbrella Policy.

Nautilus brought this suit in district court in Berkley's name as assignee and subrogee of all rights Rouhani, Towers, and Nautilus had against Philadelphia to recover this amount.  Both parties moved for summary judgment, with Berkley arguing that even if Philadelphia received late notice of Rouhani's claim, Philadelphia could not show it was prejudiced by the delay. The district court did not resolve the question of whether Philadelphia received timely notification of Rouhani's claim because of fact issues regarding Berkley's theory of "constructive notice" to Philadelphia through Wortham. The district court instead held that Philadelphia was not prejudiced as a matter of law by any failure to provide timely notice and granted summary judgment in favor of Berkley.

Philadelphia appealed to this court, which reversed the grant of summary judgment in *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342 (5th Cir. 2012) (*Berkley I*).  The court in *Berkley I* held that Philadelphia "presented sufficient facts in support of its position that it suffered prejudice to avoid summary judgment" but did not grant summary judgment in its favor.  *Id.* at 351−52.  The case was remanded to the district court, which then ordered additional post-remand discovery, and summary judgment motions were again filed by both parties.  The post-remand discovery revealed a number of "agency agreements" executed between Philadelphia and various Wortham entities.  Philadelphia then sought partial summary judgment on Berkley's "constructive notice" claim, and Berkley cross-moved for summary judgment on that same issue.  Philadelphia also argued that—

3

assuming the notice was insufficient—it was entitled to summary judgment because it suffered prejudice as a result of Berkley's untimely notice.  Berkley opposed this motion but did not move for summary judgment on the prejudice issue.

The district court granted summary judgment in favor of Philadelphia on the constructive notice issue and denied Berkley's cross-motion on the same. The district court also granted Philadelphia's motion for summary judgment on the prejudice issue.  This appeal followed.

## II. DISCUSSION

### A. Notice

We first consider whether notice to Wortham sufficed as notice to Philadelphia.  This court reviews the district court's grant of summary judgment *de novo*, applying the same standards as the district court.  *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).  Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Further, "[o]n cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."  *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) (citation omitted).  This court "may affirm the district court's decision on any basis presented to the district court."  *Haverda*, 723 F.3d at 591 (internal quotation marks and citation omitted).  "The district court's interpretation of an insurance contract is a question of law also subject to *de novo* review."  *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004) (citation omitted).

As a preliminary matter, we must examine the language of the policy requiring notice.  The Umbrella Policy, in relevant part, states that "[y]ou must

see to it that 'we' are notified promptly of an 'occurrence' or an 'offense' which involves," among other things, "[p]ermanent disabilities" and "[a]ny claim with an incurred exposure of $500,000 or above."  "You" is defined as the insured, Towers.  If the language of the policy is not ambiguous, "the court's duty is to enforce the policy according to its plain meaning."  *Id.*  However, if "the language of a policy or contract is subject to two or more reasonable interpretations, it is ambiguous."  *Id.* at 774 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)).

The Umbrella Policy only required Towers to "see to it" that Philadelphia was "notified promptly" of various claims, including Rouhani's claim.  This does not appear to require direct notice from Towers to Philadelphia and contemplates indirect notice.  Thus, the plain meaning of the language in the Umbrella Policy allows alternative means beyond direct notice.  *See id.* at 773−74.  Given that indirect notice was permitted by the Umbrella Policy, we now consider whether notice to Wortham was one of these permitted indirect methods.  Towers enlisted Wortham as an insurance broker to help it procure an excess or umbrella policy for Towers.  Wortham then contacted another broker, McGowan and Company (McGowan), who ultimately secured the Umbrella Policy with Philadelphia.  We must determine whether an agency relationship existed between Wortham and Philadelphia under this connection.

"It is true that, generally speaking, an insurance broker is considered the agent of the *insured*; if the insured reports a claim to the broker, but the broker fails to report it to the insurer, the insured is not relieved of his notice obligations."  *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 865 (Tex. App.—Corpus Christi 1998, pet. denied) (emphasis added); John Alan Appleman & Jean Appleman, Insurance Law & Practice § 5089.55 (1981).  Yet, "Texas courts have recognized that, under some narrow sets of circumstances,

No. 13-51180 c/w No. 14-50099

an insurance agent may be deemed to have acted as the agent of both the insured *and the insurer*." *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 318 (5th Cir. 2005) (emphasis added) (citations omitted). For instance, "[a]n insurance agent can act as the agent of both the insured and the *insurer* by collecting the premium and delivering the policy for the carrier, and by procuring insurance for the insured." *Maintain, Inc. v. Maxson-Mahoney-Turner, Inc.*, 698 S.W.2d 469, 472 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (emphasis added).

Philadelphia urges that "an insurance broker is considered the agent of the *insured*[,]" and that because Towers reported the claim to Wortham, the broker, "but [Wortham] fail[ed] to report it to [Philadelphia], [Towers] is not relieved of [its] notice obligations." *Duzich*, 980 S.W.2d at 865 (emphasis added). Berkley argues this situation created "dual agency," as in *Maintain* and *Duzich*. *See Maintain*, 698 S.W.2d at 472; *Duzich*, 980 S.W.2d at 865 ("[A]n insurance company may be estopped to deny that such broker is its own agent when that person has authority to perform various functions on the insurer's behalf.").

To support its contention that Wortham had authority to act on behalf of Philadelphia, Berkley submits a 2002 "agent agreement" (2002 Agreement)[2] to which Philadelphia was a party with Wortham.[3] In finding a lack of agency, the district court focused on paragraph 7 of the 2002 Agreement, which states "[Wortham] and its officers, agents, or employees are not agents of, and have no authority, express or implied, to bind [Philadelphia]." Paragraph 7

---

[2] Berkley also submitted three other agreements between Philadelphia and other Wortham entities, but these were all entered into after the verdict in the 2006 case and do not control.

[3] The 2002 Agreement actually names Consolidated as the party to the agreement, but, as previously noted, Consolidated and Wortham are the same entity. For clarity's sake, Wortham is discussed as the party to the 2002 Agreement.

concludes that "[n]o insurance submitted for consideration shall be effective until [Wortham] receives [Philadelphia's] written acceptance thereof."

Philadelphia reads paragraph 7 as not only prohibiting Wortham from binding Philadelphia to insurance contracts without Philadelphia's approval, but also as an overall prohibition of any type of agency. Berkley, however, suggests that paragraph 7 should be read as a whole and is only a limit to Wortham's ability to bind Philadelphia into insurance contracts. Thus, Berkley urges, paragraph 7 is not a prohibition of all agency relationships between the two. Examining the 2002 Agreement as a whole, there are other facts that tend to support an agency arrangement between Wortham and Philadelphia. The 2002 Agreement is titled "Agent Agreement." The 2002 Agreement names Wortham as "Agent." The purpose of the 2002 Agreement was for "[Philadelphia] to insure risks of [Wortham's] clients." Paragraph 1 of the 2002 Agreement appoints Wortham as Philadelphia's "*representative*, without exclusive territorial rights, subject to restrictions placed upon [Wortham] by the laws of the state or states in which [Wortham] is authorized to write insurance and further subject to the terms and conditions set forth [t]herein." (emphasis added).

Reading the 2002 Agreement as a whole, it at least arguably created an agency relationship between Wortham and Philadelphia. Paragraph 7 seems to be an exception to Wortham's authority that would prevent it from binding Philadelphia to insurance contracts. The express authority from the 2002 Agreement permits Wortham to act as Philadelphia's representative and delineates how premiums, commissions, and refunds are to be handled between the two. If the 2002 Agreement was not meant to establish an agency relationship between Wortham and Philadelphia and allow Wortham to represent Philadelphia as its agent for brokerage purposes, it is difficult to imagine its purpose.

7

No. 13-51180 c/w No. 14-50099

The district court found these facts did not fall into the "narrow set of circumstances" in which an insurance broker has been deemed a dual agent under Texas law because Wortham went through McGowan to obtain a policy and then submitted the McGowan offer to Towers, which Towers chose. *See Monumental Life Ins. Co.*, 403 F.3d at 318. Further, Towers paid the premium to Wortham, but Wortham would forward the premium to McGowan, not Philadelphia. While the district court was likely correct that this alone would not create an agency relationship between Wortham and Philadelphia, it ignores the intent and effect of the 2002 Agreement. Assuming, without deciding, that the 2002 Agreement did create an agency relationship, we must lastly consider whether the authority of Wortham to accept notice of claims on behalf of Philadelphia was within the scope of that agency relationship. We find that it was not.

In Texas, it is "well settled that if an agent's acts are within the scope of his authority, then notice to the agent of matters over which the agent has authority is deemed notice to the principal." *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 300 (Tex. 1981) (citation omitted). Conversely, "[a]n agent's notice of matters which is outside the scope of the agency or not related to its purposes is not imputed to the principal." *Tamburine v. Ctr. Sav. Ass'n*, 583 S.W.2d 942, 949 (Tex. App.—Tyler 1979, writ ref'd n.r.e.) (citation omitted). As such, "[b]efore notice or knowledge of an agent is imputed to his principal it must first be shown that the authority of such agent extended to the very matter about which and concerning which such knowledge or notice was acquired." *Id.*

Under the 2002 Agreement, Philadelphia expressly allowed Wortham to act as an insurance broker and sell Philadelphia policies as Philadelphia's representative, subject to Philadelphia's approval. The 2002 Agreement is silent as to whether Wortham had the ability to accept notice of claims on

8

behalf of Philadelphia.   Thus, Wortham did not have express authority to accept notice of claims.  *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex. App.—Dallas 2007, pet. denied) ("Express authority is delegated to an agent by words that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal.").

It is true that an agent who has no express authority cannot have implied authority.  *Id.*  The district court stated that Wortham could not have implied authority to accept notice of claims because the 2002 Agreement "contained no express grant of authority to accept notice of claims."  *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, No. A-10-CA-362-SS, 2013 WL 6145979, at \*5 (W.D. Tex. Nov. 21, 2013) (citation omitted). However, the relevant question here is whether the express authority of Wortham to act as an insurance broker and sell Philadelphia policies under the 2002 Agreement impliedly contained the ability of Wortham to accept notice of claims on Philadelphia's behalf.  *See Crooks*, 238 S.W.3d at 483 ("Implied authority is the authority to do whatever is reasonably necessary and proper to carry out the agent's express powers." (citation omitted)).  The authority to sell Philadelphia insurance, subject to Philadelphia's ultimate approval, would not also impliedly include the ability of Wortham to accept notice of a claim on Philadelphia's policy several years after Wortham had completed the brokering transaction.  The claims process is distinct from policy brokering, and even though Wortham may have had authority to broker policies, this authority did not impliedly include authority to accept notice of claims.  *See Landry v. State Farm Fire & Cas. Co.*, 428 F. Supp. 2d 531, 534 (E.D. La. 2006) ("The distinction between handling and procurement is well-supported by case law . . . ."); *see also Elkins v. Am. Int'l Special Lines Ins. Co.*, 611 F. Supp. 2d 752, 766–67 (S.D. Ohio 2009) (holding that "even if an insurance broker is the agent of the insurance company for purposes of soliciting and procuring the policy, that would not necessarily

make the broker the agent of the insurance company for the purpose of receiving notice of suits and claims."). Thus, implied authority did not exist for Wortham to accept notice of claims on behalf of Philadelphia.[4] In other words, even if the 2002 Agreement did allow Wortham to act as Philadelphia's agent for the purpose of brokering insurance policies, we cannot say the scope of this relationship also included authority to accept notice of claims. Accordingly, notice to Wortham of Rouhani's claim did not suffice as notice to Philadelphia. *See Tamburine*, 583 S.W.2d at 949. Thus, we AFFIRM the district court's grant of summary judgment on the issue of notice.

## B. Prejudice

Because we find the notice to Wortham insufficient as notice to Philadelphia, we next must determine whether Philadelphia suffered prejudice. To be clear, Towers did notify Philadelphia of the suit, but only after the adverse jury verdict was entered. In a well-reasoned, unanimous opinion, the *Berkley I* panel did not grant summary judgment in favor of Philadelphia on the prejudice issue, but discussed at length Texas law on prejudice from nonexistent or late notice. The court concluded that notice-of-claim provisions afford an insurer "valuable rights," the deprivation of which may establish prejudice as a matter of law, and remanded the case for consideration "in light of the analysis [t]here provided." *Berkley I*, 690 F.3d at 348−52. The *Berkley I* court also noted that where notice came after an adverse jury verdict, as here, it was not just late, but "wholly lacking." *Id.* at 350. The *Berkley I* court

---

[4] The district court also considered whether there was apparent authority for Wortham to accept notice of claims, and found there was not. However, on appeal, counsel for Berkley did not mention apparent authority in its opening or reply brief. Accordingly, we do not reach the issue of apparent authority and deem it abandoned and waived. *See In re Tex. Mortg. Servs. Corp.*, 761 F.2d 1068, 1073 (5th Cir. 1985); *Smith v. City of Tupelo, Miss.*, 281 F. App'x 279, 284 (5th Cir. 2008) (per curiam) (finding claim abandoned due to inadequate briefing).

detailed the numerous ways in which Philadelphia was prejudiced. *Id.* at 350–51. The court considered that Philadelphia "lost the ability to do any investigation or conduct its own analysis of the case, as well as the ability to 'join in' Nautilus's evaluation of the case." *Id.* at 350. The court also noted that "Philadelphia lost a seat at the mediation table," *id.*, and found its "rights were lost, leaving Philadelphia holding the bag for more than $700,000 in excess liability if Berkley prevails." *Id.* at 351. Lastly, the *Berkley I* court disagreed with the notion that Philadelphia could have meaningfully participated on appeal as a means to show lack of prejudice. *Id.*

On remand after *Berkley I*, Berkley had the opportunity to adduce additional evidence that would create a genuine dispute of material fact regarding prejudice. However, none of the evidence elicited made such a showing. The district court, considering the analysis provided in *Berkley I*, ruled that Philadelphia was prejudiced as a matter of law and noted that "[r]egardless of whether Philadelphia would have actually participated in the suit . . . Philadelphia's valuable rights were lost, including the right to have a seat at the mediation table, because it had no notice of the claim." *Berkley*, 2013 WL 6145979, at *9 (internal quotation marks and citation omitted). On this record, Berkley has presented no contrary facts to prevent a ruling of prejudice as a matter of law.

Berkley's only remaining argument on the prejudice issue is that *Lennar Corp. v. Markel Am. Ins. Co.*, decided after *Berkley I*, precludes a ruling of prejudice as a matter of law. 413 S.W.3d 750 (Tex. 2013). In this regard, the district court noted "*Lennar* held, under the specific facts of that case, whether an insurer was prejudiced by a unilateral settlement made by the insured turned on factual questions. *Lennar* made no pronouncements about prejudice more broadly, and has no apparent relevance to this case." *Berkley*, 2013 WL 6145979, at *9 n.12 (citation omitted). Berkley argues that *Lennar* requires

prejudice to be considered as a fact issue, and cannot be decided as a matter of law. The court in *Lennar* did not issue a broad pronouncement that prejudice must always be considered a question of fact.[5] *See Lennar*, 413 S.W.3d at 756. Despite Berkley's contention, *Lennar* did not change Texas law to prevent courts from ruling that post-verdict notice could be considered prejudice as a matter of law.

We agree with the reasoning and analysis regarding prejudice provided by the court in *Berkley I* and are not persuaded that *Lennar* prevents a ruling of prejudice as a matter of law.[6] Further, Berkley has presented no evidence that would create a genuine dispute of material fact regarding prejudice. Accordingly, we hold that on this record—because notice through Wortham was insufficient and Philadelphia did not receive notice until after the jury verdict, causing it to lose "valuable rights"—Philadelphia was prejudiced as a matter of law. Hence, we AFFIRM the district court's grant of summary judgment in favor of Philadelphia on the issue of prejudice.

## C. Costs

Berkley lastly argued that the district court's $9,504.00 award for premiums paid on the supersedeas bond should not be allowed because they are not specifically listed in 28 U.S.C. § 1920. It is true that these costs are not listed in § 1920, but Federal Rule of Appellate Procedure 39 does provide that "premiums paid for a supersedeas bond or other bond to preserve rights

---

[5] There, Lennar, a homebuilder, remediated homeowners for water damage repairs under an umbrella policy issued by Markel American Insurance Company (Markel) without Markel's consent. *Lennar*, 413 S.W.3d at 751−52. Markel argued it was prejudiced because "had Lennar stonewalled the homeowners, fewer repairs would have been made." *Id.* at 756. The court stated that this was a question of fact. *Id.* The court made no prohibitions from finding prejudice as a matter of law in this or any context. *See id.* at 751−66.

[6] The court in *Berkley I* did not grant summary judgment in favor of Philadelphia on this issue because fact issues existed and because Philadelphia's motion for summary judgment did not address the "late notice" ground. *Berkley I*, 690 F.3d at 352 n.22.

No. 13-51180 c/w No. 14-50099

pending appeal" are taxable in the district court.  Fed. R. App. P. 39(e)(3).  The Seventh Circuit has explained that Rule 39 was passed after § 1920, and therefore, Rule 39(e)'s express authorization of these costs is binding on district courts.  *Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 448 (7th Cir. 2007).  We agree.  As Rule 39 expressly authorizes that costs for premiums on supersedeas bonds pending appeal are taxable in the district court, we AFFIRM the grant of these costs in favor of Philadelphia.

### III. CONCLUSION

In sum, we AFFIRM the district court on each issue.