**Affirmed and Opinion Filed August 28, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00036-CV

**LANDAMERICA COMMONWEALTH TITLE COMPANY, FIDELITY NATIONAL TITLE GROUP, INC., FIDELITY NATIONAL FINANCIAL, AND FIDELITY NATIONAL PROPERTY OR CASUALTY INSURANCE, Appellants**

**V.**

**MICHAEL WIDO, DONALD WARREN, CAROLYN SUE WARREN, STERLING TRUST COMPANY, CUSTODIAN FBO DONALD WARREN IRA, 56% OR $62,503.13, AND STERLING TRUST COMPANY, CUSTODIAN FBO CAROLYN SUE WARREN IRA 43.5% OR $48,121.87, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-17536**

# MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

LandAmerica Commonwealth Title Company, Fidelity National Title Company Group, Inc., Fidelity National Financial, and Fidelity National Property or Casualty Insurance (collectively LandAmerica) appeal the trial court's judgment incorporating the jury's verdict and award of joint and several damages in the amount of $131,625 in favor of Michael Wido, Donald Warren, Carolyn Sue Warren, Sterling Trust Company, Custodian FBO Donald Warren IRA, 56% or $62,503.13, and Sterling Trust Company, Custodian FBO Carolyn Sue Warrant IRA 43.5% or $48,121.87 (collectively the Wido Group). LandAmerica raises seven issues on appeal arguing: (1) the evidence is legally and factually insufficient to support the jury's answer to

question 1, which pertains to agency and authority; (2) the evidence is legally and factually insufficient to support the jury's answers to questions 2–6, which pertain to breach of fiduciary duty; (3) the evidence is legally and factually insufficient to support the jury's answers to questions 10 and 11, which pertain to fraud by failure to disclose; (4) the evidence is legally and factually insufficient to support the jury's answer to question 14, which pertains to civil conspiracy; (5) the evidence is legally and factually insufficient to support the jury's answer to question 15, which pertains to aiding and abetting; (6) the trial court erred when it rendered judgment against LandAmerica for joint and several damages; and (7) the trial court erred when it awarded the Wido Group their attorneys' fees.

We conclude the evidence is legally and factually sufficient to support the jury's answers to question 1, finding that LandAmerica authorized Lowry Davison's actions, and question 14, finding that LandAmerica participated in a civil conspiracy. Also, we conclude the trial court did not err when it rendered judgment against LandAmerica for joint and several damages, and the Wido Group's attorneys' fees. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, Encore Mortgage Advisors Corp. and its owner Ray McDoniel raised the funds from the Wido Group to finance the construction of two residential houses in Landcaster, Texas. The Wido Group invested a total of $221,250. This transaction, which gave rise to this litigation, was referred to as the "Landcaster Project." The real property on which the construction was to occur was owned by Althea and James Rayford. Rayford Construction, an unincorporated business owned by the Rayfords, was the builder.

On January 23, 2007, the Wido Group executed powers of attorney appointing McDoniel to act as their agent in the separate closings, where documents were executed to effect the transactions, for Michael Wido and the Warrens, and to disburse the investment funds pursuant

to the agreements to the Rayfords. Encore hired LandAmerica, which was owned and operated by Texas attorney Lowry Davison, to draft the documents for the transaction and conduct the closings. The closings occurred on January 24, 2007. The terms of the investment agreement provided that the Wido Group would advance the investment funds to Encore and McDoniel, who would disburse those funds to Rayford Construction and the Rayfords to construct the houses. While construction was ongoing, the Rayfords were to make monthly interest payments of approximately $1,500. Then, once the houses were sold, the Wido Group would be paid their initial principal investment.

After the closings, a dispute arose between the Rayfords and McDoniel about the square footage of the planned construction, the cost of construction, and the payment schedule. As to the dispute about the payment schedule, Althea Rayford demanded all of the funds disbursed "up front," but the escrow agreement required periodic payments. During the course of the dispute on when and how funds would be advanced, Althea Rayford alleged that her signature had been forged on three of the exhibits attached to the escrow agreement. After comparing the documents, McDoniel agreed that Althea Rayford's signature had been forged and contacted Davison about the alleged forgery. According to McDoniel, Davison responded that he would "get the document correction agreement out to [Althea] Rayford." McDoniel did not tell the Wido Group about Althea Rayford's forgery allegation.

After the closings and advance of some funds, the Rayfords failed to make their first two interest payments on March 1, 2007 and April 1, 2007. As a result, the Wido Group requested that McDoniel foreclose on the properties, which they believed would result in the recovery of their principal investment. Instead of proceeding with foreclosure, McDoniel suggested the parties attempt to resolve their dispute through mediation.

On April 26, 2007, the Wido Group, the Rayfords, Encore, McDoniel, and Davison met for mediation. At the mediation, McDoniel appeared as the Wido Group's agent pursuant to the power of attorney. Also, McDoniel appeared with legal counsel, both individually and as chief executive officer (CEO) for Encore. The mediation session resulted in a mediated settlement agreement, which was signed by: (1) the Rayfords; (2) McDoniel, individually and as CEO of Encore; (3) McDoniel, under the power of attorney for the Wido Group; and (4) "Lowry Davison, PLLC." Pursuant to the mediated settlement agreement, the parties agreed to revise their agreements, in part: (1) to replace McDonial with David Durden and David Durden, P.C. (collectively Durden) as the agent responsible for the distribution of the Wido Group's investment funds; and (2) revise the schedule of interest payments due to the Wido Group. Also, in the mediated settlement agreement, the Wido Group released all of their respective claims against Lowry Davison, PLLC, and LandAmerica. The parties requested that Davison draft amended transaction documents pursuant to the terms of the mediated settlement agreement.

On January 6, 2008, Michael Wido visited the project and found the lot "completely empty" with "no construction whatsoever." As a result, Michael Wido contacted McDoniel and Durden. According to Michael Wido, "Durden was out of town initially, . . . now he has e-mail problems where he can't respond to my e-mails, so [Durden] kind of basically did a disappearing act." McDoniel recommended an attorney to represent the Wido Group. The Wido Group hired that attorney and foreclosure proceedings were initiated, but never finalized because "the money [had] been spent." As a result, the Wido Group decided to proceed with litigation.

In the Wido Group's fourth amended petition, they alleged the following claims: (1) breach of fiduciary duty, common law fraud, statutory fraud, negligent misrepresentation, promissory estoppel, securities fraud, negligence, and sought a declaratory judgment against Encore and McDoniel; (2) common law conversion, common law fraud, statutory fraud, breach

of contract, and sought judicial foreclosure against the Rayfords; (3) money had and received, and breach of fiduciary duty against Durden; (4) breach of fiduciary duty, common law fraud, negligence, negligent hiring, and aiding and abetting against LandAmerica; and (5) civil conspiracy against Encore, McDoniel, and LandAmerica. The Wido Group also sought their attorneys' fees.

The case was tried before a jury. All of the parties appeared for trial, except for the Rayfords and Durden. Twenty-three questions were included in the jury charge: questions 1–19 addressed the liability of the parties; questions 20–21 addressed proportionate responsibility; and questions 22–23 addressed damages. The jury found in favor of the Wido Group on multiple theories of recovery. In their motion for judgment, the Wido Group sought judgment to be imposed on the most favorable theory of recovery and for Encore and LandAmerica to be found jointly and severally liable. The trial court's judgment ordered that the Wido Group recover actual damages from Encore and LandAmerica, jointly and severally, in the amount of $131,625 and awarded them their attorneys' fees.

## II. CIVIL CONSPIRACY

In issue four, LandAmerica argues the evidence is legally and factually insufficient to support the jury's answer to question 14, which pertains to the Wido Group's claim for civil conspiracy. LandAmerica specifically challenges some of the elements of civil conspiracy through issues one, two, and three. In issue one, LandAmerica argues the evidence is legally and factually insufficient to support the jury's answer to question 1, which found LandAmerica authorized Davison's actions. In issues two and three, LandAmerica argues the evidence is legally and factually insufficient to support the jury's answers to: (1) questions 2–6, which pertain to breach of fiduciary duty; and (2) questions 10–11, which pertain to fraud by failure to disclose.

### A. Standard of Review

When examining a legal sufficiency challenge, an appellate court reviews the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). An appellant attacking the legal sufficiency of an adverse finding on which it did not have the burden of proof at trial, must demonstrate that there is no evidence to support the adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819.

In a factual sufficiency review, an appellate court considers and weighs all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). When an appellant challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, an appellate court will set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The appellate court may not substitute its judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407.

### B. Applicable Law - Civil Conspiracy

The elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Conspiracy is a derivative tort, which requires an underlying tort reflecting an

unlawful means or purpose by the conspirators. *See Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008). A defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). A civil conspiracy may be proved by circumstantial evidence and reasonable inferences from the parties' actions. *Backes v. Misko*, No. 05-14-00566-CV, 2015 WL 1138258, at *15 (Tex. App.—Dallas Mar. 13, 2015, pet. filed). When a defendant fails to object to the conspiracy question being submitted without conditioning it on the finding of a statutory violation or tort, the judgment can be supported if there was some evidence of a conspiracy to commit any of the other torts in the charge. *See Chu*, 249 S.W.3d at 444 & n.4.

### B. *LandAmerica's Involvement*

In issue four, LandAmerica argues the evidence is legally and factually insufficient to support the jury's answer to question 14, which pertains to civil conspiracy, because:

> [The Wido Group] failed to prove any evidence that [LandAmerica] w[as] a member of a civil conspiracy. [The Wido Group] asserted that LandAmerica acted in concert with Encore [or] McDoniel during the April mediation. But the only evidence presented involved actions of Lowry Davison. Davison testified that after the closings were complete he was acting under Lowry Davison, [P]LLC, not as an agent of LandAmerica. [Record citations omitted.] There was no evidence presented that LandAmerica was part of a civil conspiracy with Encore [or] McDoniel.

LandAmerica claims it was not one of the persons involved in the conspiracy. Instead, LandAmerica argues the alleged conspiracy relates to the actions of Davison, which cannot be attributed to it, because Davison was not acting as its agent at the time.

In issue one, LandAmerica claims that the Wido Group's entire case was based on the actions of Davison and there is no evidence that Davison was acting with the authority of LandAmerica: (1) when the allegation of forgery was made; (2) during any actions after closing, including the mediation; and (3) at the time of alleged failure to disclose. LandAmerica

generally refers to "authority and apparent authority" without specifying whether it is challenging express actual authority, implied actual authority, or both, in addition to its challenge to apparent authority. The Wido Group responds that there is sufficient evidence to support the jury's finding that Davison was LandAmerica's agent. Also, the Wido Group argues that LandAmerica argues inconsistently when it denies Davison was its agent or authorized to include LandAmerica in the settlement, but admits it was a party to the mediated settlement that benefitted LandAmerica.

### 1. Applicable Law - Agency and Authority

An agent is a person who is authorized by another to transact business or manage some affair by that person's authority and on account of it. *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex. App.—Dallas 2007, pet. denied). It is well settled that the law makes no presumption of agency. *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007); *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 913 (Tex. App.—Dallas 2008, no pet.); *Sw. Bell Media, Inc. v. Trepper*, 784 S.W.2d 68, 71 (Tex. App.—Dallas 1989, no writ). The existence of an agency relationship must be established by evidence. *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The liability of a principal for torts committed by its agent is governed by the same rules as those that determine the liability of any other principal. *See Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465, 475 (Tex. App.—San Antonio 2001, pet. denied); *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 530 (Tex. App.—San Antonio 1996, writ denied). Any recovery against a principal for a tort must be based on the wrongful act of an officer or agent within the course or scope of his employment. *See Crescendo*, 61 S.W.3d at 475; *Odem*, 929 S.W.2d at 530. A principal is liable for the acts of its agent when: (1) the agent has actual authority or apparent authority to do those acts; or (2) when the principal ratifies those acts. *Spring Garden 79U, Inc.*

*v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.—Houston [1st Dist.] 1994, no writ).  An agent cannot bind a principal absent either actual authority or apparent authority.  *Sanders*, 248 S.W.3d at 913.

### a.  Actual Authority

Actual authority is created through conduct of the principal communicated to the agent.  *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007); *Sanders*, 248 S.W.3d at 913.  An agency relationship is created when the principal: (1) intentionally confers authority on the agent; (2) intentionally allows the agent to believe that he has authority; or (3) allows the agent to believe that he has authority to act by lack of due care.  *Sanders*, 248 S.W.3d at 913; *Crooks*, 238 S.W.3d at 483; *Spring Garden*, 874 S.W.2d at 948.  Actual authority to act on behalf of the principal may be express or implied.  *Crooks*, 238 S.W.3d at 483; *Spring Garden*, 874 S.W.2d a 948.

Express actual authority is delegated to an agent by words that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal.  *Crooks*, 238 S.W.3d at 483.  An agent has express actual authority when the principal makes it clear to the agent that it wants certain acts to be done.  *Crooks*, 238 S.W.3d at 483.

Implied actual authority is the authority to do whatever is reasonably necessary and proper to carry out the agent's express powers.  *Crooks*, 238 S.W.3d at 483; *Spring Garden*, 874 S.W.2d a 948.  An agent who does not have express actual authority cannot have implied actual authority.  *Crooks*, 238 S.W.3d at 483.  "This is so because implied [actual] authority is authority which is proper, usual, and necessary to the exercise of the authority the principal expressly delegates."  *Nears v. Holiday Hosp. Franchising, Inc.*, 295 S.W.3d 787, 795 (Tex. App.—Texarkana 2009, no pet.).  Implied actual authority exists when appearances indicate that in some manner the agent was authorized to do what he did.  *See Pitman v. Lightfoot*, 937 S.W.3d

496, 521 (Tex. App.—San Antonio 1996, writ denied); *Mexico's Indus., Inc. v. Banco Mexico Somex, S.N.C.*, 858 S.W.2d 577, 583 (Tex. App.—El Paso 1993, writ denied); *Haywood, Jordan, McCowan of Dallas, Inc. v. Bank of Houston*, 835 S.W.2d 738, 742 (Tex. App.—Houston [14th Dist.] 1992, no writ); *City of San Antonio v. Aguilar*, 670 S.W.2d 681, 683–84 (Tex. App.—San Antonio 1984, writ dism'd). "[I]n other words there is circumstantial proof of actual authority." *Aguilar*, 670 S.W.2d at 684.

### b. Apparent Authority

Apparent authority is based on the doctrine of estoppel arising from the conduct of the principal communicated to a third party. *Gaines*, 235 S.W.3d at 182; *Sanders*, 248 S.W.3d at 913. Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of authority. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998); *Sanders*, 248 S.W.3d at 913; *Crooks*, 238 S.W.3d at 484; *Spring Garden*, 874 S.W.2d a 950. To determine an agent's apparent authority, a court examines the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Gaines*, 235 S.W.3d at 183. One who seeks to bind a principal based on the apparent authority of its agent must show that the principal acted in such a way that a reasonably prudent person would believe that the agent had the authority to act as he did. *NationsBank, N.A. v. Drilling*, 922 S.W.2d 950, 953 (Tex. 1996) (per curiam); *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981). A principal is bound even though the agent lacks actual authority when the agent acts within the scope of apparent authority. *Spring Garden*, 874 S.W.2d a 950. A court may consider only the conduct of the principal leading a third party to believe that the agent has authority in determining whether an agent has apparent authority. *NationsBank*, 922 S.W.2d at 953; *Sanders*, 248 S.W.3d at 913.

–10–

## 2. Application of the Law to the Facts

LandAmerica does not dispute that Davison was its agent and had express actual authority to close the transaction. However, LandAmerica argues that Davison was not its agent as to any of the actions taken after the closings. Question 1 of the jury charge states:

> **Did LandAmerica authorize the actions of Lowry Davison?**
>
> A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.
>
> Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.
>
> Apparent authority exists if a party:
>
> (1) knowingly permits another to hold himself out as having authority or;
>
> (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

The jury answered "Yes" to question 1.

Although question 1 does not use the term "implied actual authority," it expressly states in the second sentence of the second paragraph, "If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized." This language constitutes a definition of implied actual authority regarding which no objection was raised. "[I]mplied [actual] authority is authority which is proper, usual, and necessary to the exercise of the authority the principal expressly delegates." *See Nears*, 295 S.W.3d at 795.

LandAmerica acknowledges that Michael Wido testified he believed Davison was at the mediation representing LandAmerica. Specifically, during cross-examination by McDoniel's attorney, Michael Wido testified:

| | |
|---|---|
| Counsel: | What do you recall about Lowry Davison and his interactions and participation in the mediation? |
| Michael Wido: | It wasn't much at all. He didn't say much. I mean, after the initial introduction, "This is Lowry Davison of LandAmerica," that was pretty much it; I don't recall him saying anything. |
| Counsel: | Is that how he—you recall him identifying himself? |
| Michael Wido: | Either he did or the mediation attorney did, I'm not sure. |
| Counsel: | Did he ever stand up and say, "Hold up, hold up, hold up. I don't—I'm not here on behalf of LandAmerica?" |
| Michael Wido: | No, I don't recall that ever. |

However, LandAmerica also directs us to Davison's testimony that, after the closings were complete, he was acting under Lowry Davison, PLLC, not as an agent of LandAmerica. It is this testimony that LandAmerica claims shows there was no evidence Davison was acting with the authority of LandAmerica or that it was part of a civil conspiracy with Encore. Specifically, during cross-examination by LandAmerica's counsel, Davison testified:

| | |
|---|---|
| Counsel: | And then the parties went to mediation. Did you attend that mediation? |
| Davison: | I did not. |
| Counsel: | And can I represent to you that there's been testimony that you did attend that mediation but you have no recollection of that, correct? |
| Davison: | I have no recollection and the few things I could remember that far back would have been if I had attended a mediation. I've never met these people. [McDoniel's] the only one—only face I recognize at all. |
| | . . . . |
| | I believe I'd remembered [sic] had I gone to Dallas to a mediation with all those people sitting around a table. I don't know why [McDoniel's] saying I was there. I was not at the mediation. I had no reason to go. He—By that time he had hired Brooks Lynn as his attorney. |
| Counsel: | Okay. In addition, there is the mediation agreement with your signature. How did you come to have signed [sic] that? |

| Davison: | I can only tell you that the mediator called me on the phone, as I recall, and said, "The parties have asked would you be willing to draft the modification document in keeping with their settlement today, since you have familiarity with the case, you drew the lender's docs." I told him "Yes." |
|---|---|
| | They probably faxed me over the settlement agreement and I mailed it back to them. |

. . . .

| Counsel: | When you prepared the modification of the documents were you doing that as Lowry Davison, PLLC? |
|---|---|
| Davison: | Yes. |
| Counsel: | You were not doing that in your capacity as a fee attorney for [LandAmerica]? |

. . . .

| Davison: | They did not request that [LandAmerica] draft anything. [LandAmerica] was through. [LandAmerica] had done its job as it's supposed to do and it does in ordinary course of business; that was a completed transaction. |
|---|---|

In addition, Davison testified that he advertised under the name LandAmerica, had business cards that included he was a fee officer for LandAmerica, employed Katherine Metcalfe as an escrow officer for LandAmerica, and was authorized by LandAmerica to sign checks from its escrow account.

During direct examination by the Wido Group's counsel, McDoniel testified:

| Counsel: | Mr. Davison was at the mediation; is that correct? |
|---|---|
| McDoniel: | Yes. |

Also, during cross examination by LandAmerica's counsel, McDoniel stated:

| Counsel: | At the mediation[,] Lowry Davison agreed to prepare documents; isn't that correct? |
|---|---|
| McDoniel: | Yes. |

During the trial, some of LandAmerica's admissions were read to the jury. In particular, the following admissions, pertaining to LandAmerica's knowledge of the forgery and involvement in the mediation were read:

Admission Number 5: [] LandAmerica was a party to the mediation agreement.

Admitted to the extent [] LandAmerica is included as a released party in the mediation agreement. Otherwise denied.

. . . .

[Admission number not provided:] Before the April mediation [] LandAmerica knew that some of the underlying documents associated with the money received from the Wido [Group] were being contested by [] Rayford based on her allegation that such documents were forged.

Response: Admitted to the extent that Lowry Davison had knowledge that [] Rayford claims she did not sign Exhibit[s] B, C[,] and D to the escrow agreement. Otherwise denied.

Also, LandAmerica's response to Interrogatory number 10 was read to the jury: "For the period of 2007 through 2010 describe in detail Lowry Davison's relationship with [] LandAmerica including without limitation his relationship as an agent of [] LandAmerica. Response: Lowry Davison was a fee attorney for LandAmerica."

The mediated settlement agreement was admitted into evidence. That agreement was signed by "Lowry Davison, PLLC," released all claims against "Lowry Davison, PLLC[,] and LandAmerica Commonwealth Title, Inc." and stated that each signatory "has the authority to bind the parties for whom that signatory acts." In addition, Davison's letter attaching the amended transaction documents that he agreed to prepare for the parties pursuant to their mediated settlement agreement was admitted into evidence. The letterhead states, "Lowry Davison, PLLC, Attorney at Law" and at the bottom it states, "*Board certified Commercial Real Estate by the Texas Board of Legal Specialization and office of LandAmerica Commonwealth Title Company." Further, the facsimile cover sheet, transmitting the letter and

attached documents, references "LandAmerica Commonwealth Title." Finally, mediation notices sent to Davison were admitted into evidence.

Although there was conflicting evidence, some evidence showed Davison attended the mediation and did so in his capacity as an agent of LandAmerica. LandAmerica admitted it was a party to the mediation agreement to the extent it was included as a released party in that agreement. Davison had the authority to sign escrow checks, included LandAmerica on his letterhead and facsimile cover sheets, and prepared the amended transaction documents in accordance with the mediated settlement agreement. Viewing the evidence under the appropriate standards of review for legal and factual sufficiency, there was evidence that would enable a reasonable and fair-minded jury to reach the verdict and that evidence was not so weak as to make the verdict clearly wrong and manifestly unjust. *See City of Keller*, 168 S.W.3d at 827 (ultimate test for legal sufficiency is whether evidence would enable reasonable and fair-minded fact finder to reach verdict under review); *Cain*, 709 S.W.2d at 176 (verdict set aside for factual insufficiency only if evidence is so weak as to make verdict clearly wrong and manifestly unjust). Accordingly, applying the evidence to question 1, we conclude there was legally and factually sufficient evidence to support the jury's answer, finding that LandAmerica authorized Davison's actions, at least based upon implied actual authority. Issue one is decided against LandAmerica. As a result, there was legally and factually sufficient evidence to support the element of civil conspiracy as set out in question 14 and as raised, in part, in issue four, requiring two or more persons because LandAmerica was a person involved in the conspiracy.

### C. One or More Unlawful, Overt Acts

Also, in issue four, LandAmerica challenges the element of civil conspiracy requiring one or more unlawful, overt acts. LandAmerica challenges this element through issues two and three, which argue the evidence is legally and factually insufficient to support the jury's answers

–15–

to: (1) questions 2–6, which pertain to breach of fiduciary duty; and (2) questions 10–11, which pertain to fraud by failure to disclose. The Wido Group responds that LandAmerica has failed to challenge the independent theory of statutory fraud, which supports the judgment on their claim for civil conspiracy. In their reply brief, LandAmerica argued that "[a]s civil conspiracy is a derivative tort, LandAmerica *implicitly* challenged the finding on *any* underlying cause of action." (Emphasis added).

### 1. Applicable Law - Probable Rendition of an Improper Judgment

An appellant must challenge all independent bases or grounds that fully support the trial court's judgment. *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, No. 05-13-00870-CV, 2015 WL 4472893, at *8 (Tex. App.—Dallas July 22, 2015, no pet. h.); *Creech v. Columbia Med. Ctr. of Las Colinas Subsidiary, L.P.*, 411 S.W.3d 1, 6 (Tex. App.—Dallas 2013, no pet.); *Oliphant Fin. L.L.C. v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.). When independent jury findings fully support a judgment, an appellant must attack each independent jury finding to obtain a reversal. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, an appellate court must accept the validity of that unchallenged independent ground, and any errors in the grounds challenged on appeal are harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment. *Blackstone*, 2015 WL 4472893, at *8; *Oliphant Fin.*, 295 S.W.3d at 424; *Prater v. State Farm Lloyds*, 217 S.W.3d 739, 740–41 (Tex. App.—Dallas 2007, no pet.).

The harmless error rule states, in part, that before reversing a judgment because of an error of law, an appellate court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of

an improper judgment." TEX. R. APP. P. 44.1(a)(1); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam); *Blackstone*, 2015 WL 4472893, at \*8. The harmless error rule applies to all errors. *Magee*, 347 S.W.3d at 297 (citing *Lorusso v. Members Mut. Ins.*, 603 S.W.2d 818, 819–20 (Tex. 1980)); *Blackstone*, 2015 WL 4472893, at \*8.

### 2. Application of the Law to the Facts

Question 14 of the jury charge states:

> **Was any Defendant or Defendants part of a conspiracy that damaged Plaintiffs?**
>
> To be part of a civil conspiracy, the defendant and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to Plaintiffs. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

The jury answered question 14 "Yes" as to Encore. In the event the jury answered "Yes" as to Encore, they were instructed to answer the question as to LandAmerica. The jury also answered "Yes" as to LandAmerica.

LandAmerica did not object when the conspiracy question was submitted without conditioning it on a specific tort finding, so the judgment can be supported if there was some evidence of a conspiracy to commit any of the underlying torts in the charge. *See Chu*, 249 S.W.3d at 444. On appeal, LandAmerica does not challenge the jury's finding in question 13 that Encore committed the underlying tort of statutory fraud against the Wido Group or in question 12 that Encore committed fraud by misrepresentation. Accordingly, the errors alleged by LandAmerica in issues two and three are harmless because LandAmerica fails to challenge on appeal independent grounds or underlying torts that fully support the jury's verdict on the claim for civil conspiracy, i.e., statutory fraud and fraud by misrepresentation. *See Blackstone*, 2015 WL 4472893, at \*8–9; *Oliphant*, 295 S.W.3d at 423–24; *Prater*, 217 S.W.3d at 740–41. As a

–17–

result, there was legally and factually sufficient evidence to support the element of civil conspiracy requiring one or more unlawful, overt acts.

### D. Conclusions as to Civil Conspiracy

Based on our resolution of issues one, two, and three, we conclude there was legally and factually sufficient evidence to support the jury's answer to question 14, finding LandAmerica was part of a civil conspiracy. Issue four is decided against LandAmerica.

### III. AIDING AND ABETTING

In issue five, LandAmerica argues the evidence is legally and factually insufficient to support the jury's answer to question 15, which pertains to aiding and abetting. LandAmerica argues there is no evidence that it knowingly participated in Encore's breach of fiduciary duty to the Wido Group. The Wido Group responds that LandAmerica aided Encore's breach of fiduciary duty when "[Davison] encouraged McDoniel to downplay the threat caused by LandAmerica's forgeries" and "Davison [] remained silent as he witnessed McDoniel lie repeatedly to [the Wido Group] about the nature of the dispute with [the Rayfords] to get them to pass on the right to foreclose on [the Rayfords'] property."

In issue four, we have already concluded that there was sufficient evidence to support the Wido Group's claim for civil conspiracy. In their motion for judgment, the Wido Group sought judgment to be imposed on the most favorable theory of recovery—the jury's affirmative answer to question 14 as to civil conspiracy as this theory would impose joint and several liability on Encore and LandAmerica. LandAmerica opposed the motion for judgment, but the trial court rendered judgment against LandAmerica and Encore, jointly and severally, as sought by the Wido Group. Accordingly, we need not address issue five, which challenges the legal and factual sufficiency of the evidence to support the jury's answer to question 15, which pertains to the claim of aiding and abetting, because if they did not prevail, this claim would not provide the

Wido Group any greater relief than the relief available for civil conspiracy.[1] *See Boyce Iron Works v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) ("When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the most favorable theory entitling him to the greatest or most favorable relief" and holding that a "[prevailing] party may seek recovery under an alternate theory if the judgment is reversed on appeal."); *Holliday v. Weaver*, 410 S.W.3d 439, 444 (Tex. App.—Dallas 2013, pet. denied).

## IV. JOINT AND SEVERAL LIABILITY

In issue six, LandAmerica argues the trial court erred when it rendered judgment against LandAmerica for joint and several damages. LandAmerica contends that pursuant to sections 33.012 and 33.013 of the Texas Civil Practice and Remedies Code, it may not be held jointly and severally liable because the jury did not attribute to them a percentage of responsibility greater than 50% or find that they acted with the specific intent to do harm to engage in the conduct enumerated in the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.012–33.013 (West 2015). The Wido Group responds that the trial court was correct to disregard the jury's finding of proportionate responsibility because LandAmerica was found liable for civil conspiracy, the civil conspiracy was based on, *inter alia*, Encore's liability for statutory fraud, and two of the parties apportioned a percentage of the liability were not found liable for anything subject to the proportionate responsible statute.

### A. Applicable Law

Civil conspiracy is used to extend tort liability beyond the wrongdoer to those who merely planned, assisted, or encouraged his acts. *See Carroll v. Timmers Chevrolet, Inc.*, 592

---

[1] We express no opinion as to whether Texas law recognizes a cause of action for aiding and abetting separate and apart from a civil conspiracy claim. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001); *Juhl v. Airington*, 936 S.W.3d 640, 644 (Tex. 1996); *see also Martinez v. Ford Motor Co.*, No.04-11-00306-CV, 2012 WL 3711347, at \*4 (Tex. App.—San Antonio Aug. 29, 2012, pet. denied) (mem. op.) (aiding and abetting sometimes referred to as "concert of action").

S.W.2d 922, 925–26 (Tex. 1979); *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty, Inc.*, 393 S.W.3d 492, 506 (Tex. App.—Dallas 2013, pet. denied). Once a civil conspiracy is proved, each conspirator is responsible for all acts done by any of the conspirators in furtherance of the conspiracy. *Bentley v. Bunton*, 94 S.W.3d 561, 619 (Tex. 2002); *Carroll*, 592 S.W.2d at 926; *Helping Hands*, 383 S.W.3d at 506. A finding of civil conspiracy imposes joint and several liability on all conspirators for actual damages resulting from the acts in furtherance of the conspiracy. *Carroll*, 592 S.W.2d at 925; *Helping Hands*, 383 S.W.3d at 506. When a jury finds that liability for a civil conspiracy exists, this finding requires the legal conclusion to impose joint and several liability on the co-conspirators. *Bentley*, 94 S.W.3d at 619. Also, proportionate responsibility does not apply to statutory fraud. *Davis v. Estridge*, 85 S.W.3d 308, 311 (Tex. App.—Tyler 2001, pet. denied).

### B. Application of the Law to the Facts

LandAmerica does not challenge the jury's finding in question 13 that Encore committed the underlying tort of statutory fraud against the Wido Group. Proportionate responsibility does not apply to that claim. *See Davis*, 85 S.W.3d at 311. We have already concluded the evidence was legally and factually sufficient to support the jury's answer to question 14, finding that LandAmerica participated in a civil conspiracy. The effect of the jury's finding on civil conspiracy is to make LandAmerica and Encore responsible for the unlawful act committed by Encore. *See Helping Hands*, 383 S.W.3d at 506. The jury's finding that LandAmerica was liable for civil conspiracy required the trial court to impose joint and several liability on LandAmerica and Encore. *See Bentley*, 94 S.W.3d at 619. Accordingly, we conclude the trial court did not err when it rendered judgment against LandAmerica for joint and several damages.

Issue six is decided against LandAmerica.

## IV.  ATTORNEYS' FEES

In issue seven, LandAmerica argues the trial court erred when it awarded the Wido Group their attorneys' fees.  LandAmerica claims no rule, statute, or case permits the recovery of attorneys' fees for "breach of fiduciary duty, common law fraud, civil conspiracy, [or] aiding and abetting."  Also, LandAmerica argues the Wido Group cannot recover attorneys' fees because the underlying torts supporting their claim for civil conspiracy do not entitle them to attorneys' fees.  The Wido Group responds that LandAmerica has waived this issue because it has failed to challenge the underlying tort of statutory fraud, which supports their claim for civil conspiracy and entitles them to attorneys' fees.

LandAmerica is correct that attorneys' fees are not available for breach of fiduciary duty and common law fraud.  *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 320 (Tex. 2006) (noting attorney's fees not recoverable  for common law frauds claims); *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 917 (Tex. App.—Dallas 2014, pet. denied) (under breach-of-fiduciary-duty theory, cannot recover attorneys' fees); *Oldner v. Medlock*, No. 05-10-00848, 2012 WL 114192, at *2 (Tex. App.—Dallas Jan. 12, 2012, no pet.) (mem. op.) (attorney's fees not available for breach of fiduciary duty claim); *Town E. Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 812 (Tex. App.—Dallas 1987, no pet.) (party not entitled to attorney's fees under common law fraud claim).  Also, LandAmerica is correct that if the underlying tort does not entitle the Wido Group to attorneys' fees, they may not recover their attorneys' fees for the  conspiracy to commit that tort.  *See Heafner & Assocs. v. Koecher*, No. 01-91-01075-CV, 1994 WL 389030, at *19 (Tex. App.—Houston [1st Dist.] July 28, 1994, writ denied) (not designated for publication) (existence of conspiracy does not provide independent basis authorizing award of attorneys' fees not otherwise recoverable).

–21–

However, LandAmerica does not challenge the Wido Group's underlying tort of statutory fraud. A person who violates section 27.01 by committing statutory fraud "shall be liable to the person defrauded for reasonable and necessary attorney's fees." TEX. BUS. & COM. CODE ANN. § 27.01(e) (West 2009); *Hawkins v. Walker*, 233 S.W.3d 380, 396 (Tex. App.—Fort Worth 2007, no pet.). Accordingly, because LandAmerica has not challenged an independent ground that fully supports the trial court's award of attorneys' fees on the Wido Group's civil conspiracy claim, i.e., the underlying tort of statutory fraud, we conclude LandAmerica has not shown the trial court erred when it awarded the Wido Group their attorneys' fees. *See Blackstone*, 2015 WL 4472893, at *8–9; *Oliphant*, 295 S.W.3d at 423–24; *Prater*, 217 S.W.3d at 740–41.

Issue seven is decided against LandAmerica.

## V. CONCLUSION

The evidence is legally and factually sufficient to support the jury's findings that LandAmerica authorized Davison's actions and participated in a civil conspiracy. Also, the trial court did not err when it rendered judgment against LandAmerica for joint and several damages and awarded the Wido Group their attorneys' fees.

The trial court's judgment is affirmed.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

140036F.P05

–22–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LANDAMERICA COMMONWEALTH
TITLE COMPANY, FIDELITY
NATIONAL TITLE GROUP, INC.,
FIDELITY NATIONAL FINANCIAL,
AND FIDELITY NATIONAL PROPERTY
OR CASUALTY INSURANCE, Appellants

No. 05-14-00036-CV      V.

MICHAEL WIDO, DONALD WARREN,
CAROLYN SUE WARREN, STERLING
TRUST COMPANY, CUSTODIAN FBO
DONALD WARREN IRA, 56% OR
$62,503.13, AND STERLING TRUST
COMPANY, CUSTODIAN FBO
CAROLYN SUE WARREN IRA 43.5% OR
$48,121.87, Appellees

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-17536.
Opinion delivered by Justice Lang. Justices
Stoddart and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Michael Wido, Donald Warren, Carolyn Sue Warren, Sterling Trust Company, Custodian FBO Donald Warren IRA, 56% or $62,503.13, and Sterling Trust Company, Custodian FBO Carolyn Sue Warren IRA 43.5% or $48,121.87 recover their costs of this appeal from appellants LandAmerica Commonwealth Title Company, Fidelity National Title Group, Inc., Fidelity National Financial, and Fidelity National Property or Casualty Insurance.

Judgment entered this 28th day of August, 2015.