# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 31, 2020

No. 20-20095

Lyle W. Cayce
Clerk

Evanston Insurance Company,

*Plaintiff—Appellant*,

*versus*

OPF Enterprises, L.L.C.,

*Defendant—Appellee*.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2048

Before Owen, *Chief Judge*, and Dennis and Haynes, *Circuit Judges*.
Per Curiam:*

Evanston Insurance Company appeals the district court's grant of summary judgment in favor of OPF Enterprises, L.L.C.  For the reasons set forth below, we AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20095

## I.  BACKGROUND

Evanston issued OPF two professional liability insurance policies. The first ("2016 Policy") ran from March 20, 2016, until March 20, 2017, and the second ("2017 Policy," and together with the 2016 Policy, "the Policies") ran from March 20, 2017, until March 20, 2018.  The Policies contained identical language covering general and professional liability insurance for claims made against OPF during the policy periods.

The Policies included a "Discovery Clause," which provided coverage for claims made against OPF after the end date of the policy period if OPF provided written notice to Evanston during the policy period.  More specifically, this clause stated that

> [i]f during the Policy Period, [OPF] first becomes aware of a specific Wrongful Act, Personal Injury or offense which is reasonably expected to result in a Claim within the scope of coverage of this Coverage Part, then [OPF] may provide written notice as stated in Item 11 . . . . If such written notice is received by the Company[1] during the Policy Period, then any Claim subsequently made against [OPF] shall be deemed . . . to have been first made on the date on which such written notice is received by the Company.

Item 11 provided an email address, physical address, and fax number where notice could be sent.

In January 2017, OPF purchased five million pounds of ceramic proppant—a solid material used in oil extraction operations—and resold the proppant to Apache Corporation.  In February 2017, during the coverage period of the 2016 Policy, Apache notified OPF that some of Apache's equipment sustained damage from material found in OPF's proppant.

---

[1] In the Policies, "the Company" refers to Markel Corporation, which owns Evanston and underwrites its policies.

No. 20-20095

On March 1, 2017, OPF provided written notice of the potential claim to its insurance agent, Porter Insurance Agency, Inc.  Shortly after, on March 3, 2017, Porter notified AmWINS Brokerage of Texas, LLC of the incident stating, "This is for your information only at this time, since there is no claim demand made against [OPF]."  AmWINS did not forward this message to Evanston.

AmWINS had authority to complete a number of insurance brokerage tasks on Evanston's behalf.  AmWINS could "receive and accept proposals for insurance"; "effect, issue, countersign and deliver [insurance] policies"; "collect, receive and give receipts for premiums"; and "cancel or non-renew [insurance] policies."  Notably, the Producer Agreement required AmWINS to "immediately notify [Evanston] of all claims, suits, and notices."

In April 2017, during the coverage period of the 2017 Policy, Apache demanded that OPF pay approximately $1.5 million in damages caused by the contaminated proppant.  OPF gave the demand letter to Porter, which then forwarded it to AmWINS, which in turn forwarded it to Evanston.  Evanston received the demand letter on April 7, 2017.

Evanston filed suit against OPF, alleging that it had no duty to defend or indemnify OPF for the damage caused by the contaminated proppant because the claim was not covered by either of the Policies.  After the parties filed cross-motions for summary judgment, the district court granted summary judgment in OPF's favor.  Evanston timely appealed.

## II.   Legal Standard

"We review a district court's grant of summary judgment *de novo*, applying the same standard as did the district court." *Stults v. Conoco, Inc.*, 76 F.3d 651, 654 (5th Cir. 1996).  When parties have filed cross-motions for summary judgment, "we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir.

2001). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### III. DISCUSSION

This dispute centers on whether OPF provided sufficient notice to trigger coverage under the 2016 Policy. To answer this question, we first consider whether the policy required OPF to provide written notice to Evanston as specified in Item 11 (OPF's notice did not comport with Item 11). We then consider whether AmWINS was Evanston's agent for purposes of receiving notice. Because we conclude that OPF was not required to provide notice in accordance with Item 11 and that AmWINS acted as Evanston's agent, we affirm that OPF's notice was sufficient.

Under Texas law,[2] insurance policies are interpreted "using the same rules of interpretation and construction applicable to contracts generally." *Tesoro Ref. & Mktg. Co. v. Nat'l Union Fire Ins. Co.*, 833 F.3d 470, 474 (5th Cir. 2016). The first step of the policy interpretation is to analyze the policy's language. *See RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). Texas law requires that language be given its plain meaning unless the wording shows an intention to "impart a technical or different meaning." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003). To determine plain meaning, courts may look to dictionary definitions and a term's ordinary usage. *See Anadarko Petrol. Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192 (Tex. 2019).

The 2016 Policy states that OPF "*may* provide written notice" in the manner specified in Item 11. Common usage and dictionary entries demonstrate that *may* usually suggests that an action is optional. *See, e.g.,*

---

[2] In this diversity case, Texas substantive law applies. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

*May*, Merriam-Webster.com (last visited Aug. 13, 2020) (defining "may" as "used to indicate possibility or probability" and "sometimes used interchangeably with *can*"). Though *may* can be used in an "auxiliary function expressing purpose or expectation," this is an alternate (not primary) definition, *see id.*, and we decline to use an "auxiliary" definition as the most widely understood meaning of a term.

Further, we do not "simply stop at the dictionary definitions" or "isolate any word, phrase, sentence, or section from its setting and construe it without considering its context." *Anadarko*, 573 S.W.3d at 193. Context here demonstrates that Evanston affirmatively chose to use the word *may*—not an imperative like *must* or *shall*—in this provision. Indeed, in other provisions, the policy did use the imperative *shall*: The next sentence contained the phrase "shall be deemed." If Evanston wanted to require that written notice be sent to the email address, fax number, or physical mailing address listed in Item 11, then it could have done so. But Evanston did not.

For these reasons, we affirm that a plain reading of the 2016 Policy's language shows that OPF had the option to provide written notice according to Item 11, but OPF was not required to provide notice in that manner.

We next consider whether OPF's notice to AmWINS through Porter constituted sufficient notice. To determine whether notice to AmWINS counted as notice to Evanston, we must determine whether AmWINS was properly considered an agent who could receive notice. Evanston asserted in the district court that AmWINS was OPF's broker and thus agent. Even assuming that were true, there are "some narrow sets of circumstances [in which] an insurance agent may be deemed to have acted as the agent of both the insured and the insurer." *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 318 (5th Cir. 2005). One such circumstance is when an agent "has authority to perform various functions on the insurer's behalf." *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 865 (Tex. App.—Corpus Christi

1998, pet. denied).  If notice falls under an agent's responsibilities, then notice to that agent qualifies as notice to the principal.  *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 300 (Tex. 1981); *cf. Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, 600 F. App'x 230, 235 (5th Cir. 2015) (per curiam).

Here, AmWINS was Evanston's agent under a "Producer Agreement" that contained express language requiring AmWINS to "immediately notify [Evanston] of all claims, suits, and notices."  Under this agreement, AmWINS was clearly responsible for providing notice of claims to Evanston, so it served as Evanston's agent for this purpose.  Accordingly, we conclude that the communication from OPF to AmWINS about the contaminated proppant and corresponding potential claim constituted sufficient notice to Evanston.

## IV. Conclusion

Based on the foregoing reasons, the judgment of the district court is AFFIRMED.